White, J.
The judgment of.- the district court is manifestly erroneous. In the first place, it was error to reverse or modify the judgment of the common pleas without having before the court the parties affected by such reversal or modification. In the next place, after the filing of the second petition in error, and all the parties interested were before the court, it was error to reverse the judgment as to Morris, Ward & Brown, and leave it standing in full force against Tod’s executors, and the Girard Iron Companju
If the answer of Morris, Ward & Brown constituted a defense to the action for them, it operated equally as a defense for their co-defendants.
The cause was in equity, and the same liability was sought to be enforced against all the defendants; but vruter sese, they were chargeable in the inverse order in which they became assignees of tho lease and assumed to perform its stipulations. On the cross-petition of Tod’s executors, and the undisputed facts, Morris, Ward & Brown were bound to fulfill the terms of the lease and save the executors harmless on account thereof. By the judgment of the district court Morris, Ward & Brown were relieved from this liability, and the performance of the terms of lease charged upon Tod’s executors and the Girard Iron Company.
If the court of common pleas was right in sustaining the demurrer to the answer, the judgment of that court ought not to have been disturbed. The only remaining question, therefore, is, whether the answer constituted a defense. We think it did not.
By the terms of the lease the lessee purchased all the coal on the demised premises. The quantity of coal was to be ascertained and paid for in the mode prescribed in the lease. It is stipulated in the lease that Tod is to go forward with all reasonable dispatch, to mine and remove the coal, and on the 1st days of January and July of every year, to pay twenty-five cents per ton for all the coal that may'have been mined and removed; and if found in quality and quantity sufficient to render the same practicable, after the year 1862, to mine not less than thirteen thousand tons annually, or on default there *473 of, pay for said quantity. It is further stipulated that in the event that the payments thus required to be made should be more than sufficient to pay for the coal mined in any year, the “ surplus payments ” are to be applied on any future year’s mining that may be in excess of said quantity. By this stipulation the surplus payments are to be applied in payment of the excess of coal mined, annually, over and above the thirteen thousand tons. The claim set up in the answer is that such payments are to be applied to pay for the unmined coal, without reference to when mined, if mined at all. This claim is not in accordance with the agreement, and cannot be supported.
The demurrers to the answer were properly sustained by the court of common pleas, and che district erred in holding otherwise. The judgment of the court last named, is, therefore, reversed, and that of the common pleas affirmed.